375 N.E.2d 1142 (1978)
Clara COOPER, Appellant,
v.
ROBERT HALL CLOTHES, INC., Appellee.
No. 2-476A168.
Court of Appeals of Indiana, Second District.
May 22, 1978.
Rehearing Denied June 26, 1978.
Wade R. Bosley, Marion, for appellant.
Merton Stanley, Winslow, Stanley & Winslow, Kokomo, for appellee.
WHITE, Judge.
Clara Cooper (Cooper) sued Robert Hall Clothes, Inc. (Hall), Superior Maintenance Supply, Inc. (Superior), and Texize, a division of Norton-Norwich Products, Inc. (Texize) for $75,000.00 in damages for bodily injuries allegedly sustained in a fall in Hall's store. Shortly before trial Cooper accepted $1,990.00 from Texize and $10.00 from Superior and executed two documents each entitled "Release of All Claims". One writing purported to release Cooper's claim against Texize and the other her claim against Superior while reserving, in both, her right to proceed against Hall. She thereupon dismissed Superior and Texize from the suit. Hall's motion for summary judgment was granted on the ground that, as a matter of law, Cooper's release of Texize and Superior also released Hall. Holding that the reservation clauses in the release are valid and effective, we reverse.
The documents executed by Cooper for Hall and Texize contain all the language ordinarily associated with a release:
"I ... hereby fully and forever release, acquit and discharge ... from any and all actions, claims and demands *1143 of whatsoever kind or nature . . it being understood and agreed that the acceptance of said sum is in full accord and satisfaction of a disputed claim ...
"I hereby declare ... that the amount stated herein is the sole consideration for this release, and that I voluntarily accept said sum for the purpose of making a full and final compromise, adjustment and settlement of all claims for injuries, losses and damages resulting from or to result from said accident."
However, each document also contains a specific reservation:
"This release is expressly intended to release only... and is not intended to release ROBERT HALL CLOTHES, INC. from any liability to me on account of any and all known and unknown injuries, losses and/or damages of whatever nature including consequential damages sustained by me... ."
The basis for Hall's Motion to Dismiss Cooper's complaint, and for the court's granting of that Motion, is the ancient rule that the release of one joint tortfeasor is the release of all joint tortfeasors. Bedwell v. DeBolt (1943), 221 Ind. 600, 609, 50 N.E.2d 875, 878.
The sole question, then, is whether the reservation clauses in the releases are legally effective.
In the early part of this century Indiana answered that question in the negative. Cleveland, etc. R. Co. v. Hilligoss (1908), 171 Ind. 417, 86 N.E. 485, said:
"`Therefore, if he [the injured party] accepts the satisfaction [voluntarily] made by one, that is a bar to all. And so a release of one releases all, although the release expressly stipulates that the other defendants shall not be released. And this rule is held to apply, even though the one released was not in fact liable.' 1 Cooley, Torts (3d ed.), * 161."
In the succeeding years a number of devices have been successfully employed to circumvent that rule. The most common is a covenant-not-to-sue whereby the injured party, for an agreed consideration, contracts with one joint tortfeasor not to pursue his claim against that tortfeasor. Lows v. Warfield (1971), 149 Ind. App. 569, 274 N.E.2d 553. A variation of the covenant-not-to-sue is the loan-receipt-agreement whereby one or more putative tortfeasors lend a sum of money to a personal injury claimant who promises not to pursue his claim against the lenders and to repay the loan only in some stipulated proportion to his recovery, if any, from the other putative tortfeasors. See the discussion of loan agreements in N.I.P.S. Co. v. Otis (1969), 145 Ind. App. 159, 167-182, 250 N.E.2d 378, cited with approval in Amer. Transport v. Cent. Ind. R.R. Co. (1970), 255 Ind. 319, 322, 264 N.E.2d 64. See, also, Geyer v. City of Logansport (1976), Ind. App., 346 N.E.2d 634, 640. (Reversed on other grounds 370 N.E.2d 333.) A loan agreement with one joint tortfeasor not to execute against him upon a judgment against all joint tortfeasors has also been approved. American Transport Co. v. Central Indiana Railway Co. (1970), 255 Ind. 319, 264 N.E.2d 64.
During the period of these developments the Indiana courts have looked with ever increasing disfavor upon the rule that the release of one is a release of all joint or concurrent tortfeasors. See Wecker v. Kilmer (1973), 260 Ind. 198, 294 N.E.2d 132. Even as early as sixty years ago, in Gates v. Fauvre (1918), 74 Ind. App. 382, 397, 119 N.E. 155, 160, in regard to an attempted release of only one of several joint obligors,[1] the court said:
"A release being a contract, the primary rule of construction is that the intention of the parties must govern. The intention is to be gathered from the instrument when the release is in writing, and from the facts, circumstances, and relations of the parties when the release relied upon arises by operation of law. To enable the court to properly construe a release, where it is ambiguous, extrinsic evidence is admissible to explain the circumstances under which it was executed, *1144 or the facts and transactions relied upon to show the release, when it is not evidenced by a written instrument. 34 Cyc 1075; 24 Am. and Eng. Ency. Law 290; Rowe v. Rand (1887), 111 Ind. 206, 211, 12 N.E. 377; Walls v. Baird, supra [91 Ind. 429-434].
"To avoid hardships and inequitable results not intended by the parties, courts in some instances have construed ambiguous releases as agreements not to sue the party released, and refused to give to such instruments or arrangements the effect of releasing other joint obligors. In some instances agreements not to sue one of several joint obligors at any time have been given the effect of an absolute release of such obligor, with the results attendant upon such release. Such phases of the doctrine of release or agreements not to sue have not been passed upon by the courts of Indiana, but the decisions of this state are in accord with the generally prevailing doctrine which emphasizes the importance of ascertaining and following the intention of the parties when it can be done without violence to the language employed where the alleged agreement is in writing, or without disregarding the plain intention of the parties, at the time of the transactions involved, as evidenced by their conduct in relation thereto. Aylesworth v. Brown, supra [31 Ind. 270, 276]; Walls v. Baird, supra; 34 Cyc 1084; 24 Am. and Eng. Ency. Law 292, 293; 1 Parsons, Notes and Bills 250; Line & Nelson v. Nelson & Smalley (1876), 38 N.J.L. 358, 360; Parmelee v. Lawrence (1867), 44 Ill. 405, 413."
Somehow that rationale was never applied in Indiana to the release of one joint tortfeasor. Perhaps it was because most plaintiffs' attorneys felt more comfortable with other devices and thus never before has the issue arisen.
In Landers v. McComb Window and Door Co. (1969), 145 Ind. App. 38, 248 N.E.2d 358, a personal injury tort action, however, the court had before it a quite similar question, whether the dismissal by plaintiff, during trial and for a monetary consideration of one defendant constituted a release of a co-defendant. The agreement between the plaintiff and the dismissed defendant was not in writing. The jury's verdict for plaintiff against the remaining defendant was held to be a finding that a release was not intended and was upheld by the appellate court as sustained by the evidence relevant to intent.
In Wecker v. Kilmer (1973), 260 Ind. 198, 203, 294 N.E.2d 132, the Indiana Supreme Court instructed the United States Court of Appeals for the Seventh Circuit as to the Indiana law concerning the question of whether the release of a first tortfeasor operated to release a subsequent tortfeasor, a physician whose treatment allegedly aggravated the injury. After criticizing the "prevailing view" that the second tortfeasor was released and after comparing the position of the subsequent tortfeasor to that of a third party beneficiary, the court, quoting from Loper v. Standard Oil Company (1965), 138 Ind. App. 84, 90, 211 N.E.2d 797, 801, held that:
"`The intent of the parties is the controlling factor in resolving the question of the rights of a third party beneficiary: such determination must be established from the manifestations of the parties as exhibited by the terms of the written [instrument] and testimony related thereto.'" (Wecker's emphasis.)
Wecker further held: "The controlling factors are whether the plaintiff in fact received full satisfaction for his injuries and whether the parties to the release intended it to be in full satisfaction, both of which require a factual determination beyond the face of the instrument." (260 Ind. at 203, 294 N.E.2d at 135.)
A "factual determination beyond the face of the [release]" was necessary in Wecker because the written instrument in that case contained no expression of the intent of the parties with respect to the injured party's claim against the second tortfeasor. And for that same reason Wecker did not address itself to the question of the legal effect of a reservation written into releases, *1145 such as those in the releases now before us, nor has any such Indiana case come to our attention. There are, however, several judicial opinions from other jurisdictions which have held that such clauses are valid and effective. An early such case is Dwy v. Connecticut Co. (1915), 89 Conn. 74, 92 A. 883. It contains a scholarly, but tedious, discussion of the cases which had touched upon the subject and concludes that a release with such a clause may be construed to be a covenant-not-to-sue. A much later case, Aro Manufacturing Co., Inc. v. Convertible Top Replacement Co., Inc. (1964), 377 U.S. 476, 500, 84 S.Ct. 1526, 1540, 12 L.Ed.2d 457, has almost nothing to say about the history or theory of either the old or the new rule. However, it makes this interesting observation:
"Even in the area of nonpatent torts it [i.e., the old rule that the release of one joint tortfeasor is the release of all] has been repudiated by statute or decision in many if not most States, see Prosser, supra, ["Torts (2d ed. 1955), at 243-244"] at 245, and by the overwhelming weight of scholarly authority. E.g., American Law Institute, Restatement of Torts (1939), § 885(1) and Comments b-d. And application of the rule to contributory infringement [of patent rights] has been rejected by this Court. In Birdsell v. Shaliol, supra, 112 U.S. 485 at 489, 5 S.Ct. 244, at 246, 28 L.Ed. 768, the Court applied to a patent case the proposition that `By our law, judgment against one joint trespasser, without full satisfaction, is no bar to a suit against another for the same trespass.' What is true of a judgment is true of a release. See Prosser, supra, at 241-244. A release given a direct [patent] infringer in respect of past infringement, which clearly intends to save the releasor's rights against a past contributory infringer, does not automatically surrender those rights. Thus the District Court was correct in denying that `defendants are entitled to the fortuitous benefit of the old joint tortfeasor rule.'"
What may be the latest expression of Indiana's attitude toward the problem is found in Lows v. Warfield (1971), 149 Ind. App. 569, 575, 274 N.E.2d 553, 556. Without mentioning Dwy v. Connecticut Co., supra, Judge Buchanan adopts its rationale in saying "[I]nstruments in the form of releases will be construed as `covenants not to sue' in order to carry out the intentions of the parties as they appear from the context and the surrounding circumstances. Snyder et al. v. Miller et al. (1939), 216 Ind. 143, 22 N.E.2d 985; Steeg and Associates, Inc. v. Rynearson (1968) [143 Ind. App. 567] 241 N.E.2d 888."
In that case, however, the instrument in question was clearly labeled "Covenant Not to Sue" and contained no words of release or discharge.
To construe the releases at bar as covenants not to sue would effectuate the parties' obvious intent not to release Hall but would frustrate their equally obvious intent to release Superior and Texize. Although there may be little practical difference between the protection of a release and that of a covenant-not-to-sue there is no longer any logical reason why parties should not be able to choose for themselves which form of contract they use. Nor is there any reason the courts should resort to the patent subterfuge of calling a release a covenant-not-to-sue to avoid the unjust effect of an archaic rule of law. Better that we abolish the rule.
In 1939 the American Law Institute published its Restatement of the Law of Torts. § 885 gave expression to case law and statutes which in some jurisdictions has had the effect of abolishing or greatly modifying the rule, as follows:
"§ 885. EFFECT OF RELEASE OF OR PAYMENT BY ONE OF SEVERAL TORTFEASORS.
(1) A valid release of one tortfeasor from liability for a harm, given by the injured person, discharges all others liable for the same harm, unless the parties to the release agree that the release shall not discharge the others and, if the release is embodied in a document, unless such agreement appears in the document.

*1146 (2) A covenant not to sue one tortfeasor for a harm does not discharge any other liable for the harm.
(3) Payments made by one tortfeasor on account of a harm for which he and another are each liable, diminish the amount of the claim against the other whether or not it was so agreed at the time of payment and whether the payment was made before or after judgment; the extent of the diminution is the amount of the payment made, or a greater amount if so agreed between the payor and the injured person."[2]
A 1960 annotation in 73 A.L.R.2d beginning at 403, notes at 422, § 10, that "there is a growing body of authorities which no longer recognize that the release of one of several tortfeasors automatically releases all, and under which the intention of the parties to the release is the crucial test. Those cases are cited and summarized in § 11 at page 425 of 73 A.L.R.2d.
In our opinion the Restatement § 885 and the cases cited in 73 A.L.R.2d at 425 are in general accord with the views expressed by the Supreme Court of Indiana in Wecker v. Kilmer, supra [(1973), 260 Ind. 198, 294 N.E.2d 132]. We therefore adopt the Restatement of Torts § 885(1) as the Indiana rule applicable to the question before us. That rule clearly requires that we hold that the releases given to Texize and Superior do not release Hall.
The judgment is reversed and the cause is remanded for further proceedings not inconsistent with the views we have expressed.
Reversed and remanded.
SULLIVAN, J., and GARRARD, P.J. (participating by designation), concur.
NOTES
[1] A like common law rule is applicable to joint obligors: a release of one is a release of all.
[2] Adams v. Dion (1973), 109 Ariz. 308, 509 P.2d 201, 202, speaks of a proposed revision of § 885. Tentative Draft No. 16, 1970, reads in part:

"A valid release of one tortfeasor ... does not discharge others liable for the same harm, unless it is agreed that it shall do so."
Adams v. Dion also notes: "Some states, for some time, had a rule that there had to be a reservation of rights against others, in the release itself, but as the Restatement says, this turned out to be a trap for the unwary who did not seek legal advice, and such a condition should not be a requirement." (509 P.2d at 202.)